JS-6

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KIERRE TOWNSEND, on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BRINDERSON CORPORATION, et al.,<br><br>    Defendants. | Case No. CV 14-5320 FMO (RZx)<br><br>**ORDER Re: MOTION TO REMAND** |

Having reviewed and considered all the briefing filed with respect to plaintiff's Motion to Remand ("Motion"), the court concludes that oral argument is not necessary and orders as follows. See Fed. R. Civ. P. 78; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001).

**BACKGROUND**

On June 3, 2014, plaintiff Kierre Townsend ("plaintiff") filed a class action complaint in Los Angeles County Superior Court ("state court") against defendants Brinderson Constructors, Inc.[1] ("Brinderson"), BP America, Inc. ("BP America"), and BP Corporation North America, Inc. ("BP NA") (collectively, "defendants"). (See Notice of Removal ("NOR"), Exhibit ("Exh.") A ("Complaint") at ¶ 1). The Complaint asserts five claims for relief under California law: (1) failure to provide meal

---

[1] Incorrectly identified in the Complaint as Brinderson Corporation. (See NOR at 1).

periods, Cal. Labor Code §§ 204, 223, 226.7, 512 & 1198; (2) failure to provide rest periods, Cal. Labor Code §§ 204, 223, 226.7 & 1198; (3) failure to pay hourly and overtime wages, Cal. Lab. Code §§ 223, 510, 1194, 1197 & 1198; (4) failure to timely pay final wages, Cal. Labor Code §§ 201-203; and (5) unfair competition, Cal. Bus. & Prof. Code §§ 17200, et seq. (See Complaint at ¶¶ 23-89). Plaintiff seeks to represent several subclasses of persons employed by Brinderson in hourly or non-exempt positions in California during the relevant time period, which is defined as the "time period beginning four years prior to the filing of this action until judgment is entered[.]" (Id. at ¶ 15). The Complaint alleges that the individual claims of the purported class members are under $75,000 and that the aggregate claims are under $5,000,000. (Id. at ¶ 3).

On July 8, 2014, Brinderson removed the case to this court on the basis of federal question jurisdiction, 28 U.S.C. § 1331, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). (See NOR at ¶ 1). Brinderson alleged federal question jurisdiction under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), arguing that the LMRA preempts plaintiff's state-law claims. (See id. at ¶¶ 7-13). Additionally, Brinderson alleged jurisdiction pursuant to CAFA because the action "is a purported class action in which there are more than 100 putative class members, it is between citizens of different states, and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs." (Id. at ¶ 14).

On July 23, 2014, the court remanded the action to state court finding that Brinderson failed to demonstrate that plaintiff's claims were preempted by a collective bargaining agreement ("CBA") (see Court's Order of July 23, 2014 ("remand order") at 6), and that it failed to show by a preponderance of the evidence that the amount in controversy exceeded CAFA's $5 million threshold. (See id. at 7). On February 12, 2015, the Ninth Circuit vacated the remand order "[i]n light of the Supreme Court's decision in Dart Cherokee Basin Operating Co. v. Owens," 135 S.Ct. 547 (2014). See Townsend v. BP America, Inc., 593 Fed.App'x 606 (9th Cir. 2015). The court "express[ed] no view as to the . . . court's determination that it lacked federal question jurisdiction[.]" Id.

On February 23, 2015, Brinderson filed a Notice of Amendment to Notice of Removal and an Amended Notice of Removal by Defendant Brinderson Constructors, Inc. ("Amended NOR").

1 The Amended NOR expanded significantly upon Brinderson's contention with respect to whether plaintiff's state law claims are preempted under the LMRA. (See Amended NOR ¶ 12). On February 26, 2015, plaintiff filed the instant Motion.

## LEGAL STANDARD

Removal of a civil action from the state court where it was filed is proper if the action might have originally been brought in federal court. See 28 U.S.C. § 1441(a) ("[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court[.]"). "The burden of establishing federal jurisdiction is upon the party seeking removal[.]" Emrich v. Touche Ross & Co., 846 F.2d 1190, 1195 (9th Cir. 1988); see Abrego Abrego v. The Dow Chemical Co., 443 F.3d 676, 684 (9th Cir. 2006) (per curiam) (noting in CAFA action the "longstanding, near-canonical rule that the burden on removal rests with the removing defendant").

## DISCUSSION[2]

I. CAFA JURISDICTION.[3]

"CAFA provides expanded original diversity jurisdiction for class actions meeting the amount in controversy and minimal diversity and numerosity requirements set forth in 28 U.S.C. § 1332(d)(2)." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co., 602 F.3d 1087, 1090-91 (9th Cir. 2010); see Ibarra v. Manheim Investments, Inc., 775 F.3d 1193, 1195 (9th Cir. 2015) ("A CAFA-covered class action may be removed to federal court, subject to more liberalized jurisdictional requirements[.]"). CAFA vests district courts with "original jurisdiction of any civil action in which the matter in

---

[2] To the extent to court relies on evidence objected to by the parties, those objections are overruled unless otherwise indicated.

[3] Brinderson asks the court to take judicial notice of public court documents, and plaintiff does not oppose. Pursuant to Federal Rule of Evidence 201, the court grants the request. See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n. 6 (9th Cir. 2006) ("We may take judicial notice of court filings and other matters of public record."); see also In re Zulueta, 520 Fed.Appx. 558, 559 (9th Cir. 2013) (taking judicial notice of the docket in underlying proceedings).

controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and is a class action consisting of more than 100 members "in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant[.]" 28 U.S.C. § 1332(d)(2), (d)(5)(B); see also Standard Fire Ins. Co. v. Knowles, 133 S.Ct. 1345, 1348 (2013).

"[N]o antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court." Dart Cherokee, 135 S.Ct. at 554. However, "under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." Abrego Abrego, 443 F.3d at 685. "A defendant seeking removal of a putative class action must demonstrate, by a preponderance of evidence, that the aggregate amount in controversy exceeds the jurisdictional minimum." Rodriguez v. AT&T Mobility Servs. LLC, 728 F.3d 975, 981 (9th Cir. 2013). "When plaintiffs favor state court and have prepared a complaint that does not assert the amount in controversy, or that affirmatively states that the amount in controversy does not exceed $5 million, if a defendant wants to pursue a federal forum under CAFA, that defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million, to satisfy other requirements under CAFA, and to persuade the court that the estimate of damages in controversy is a reasonable one." Ibarra, 775 F.3d at 1197. "CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

As an initial matter, Brinderson contends, relying on Dart Cherokee and Ibarra, that plaintiff was required but failed to submit any evidence that the amount in controversy is less than $5 million, (see Defendant Brinderson Constructors, Inc.'s Opposition to Plaintiff's Motion to Remand ("Opp'n") at 2 & 11-12), and therefore, the Motion should be denied. (See id. at 2-3, 11-12 & 18). Contrary to Brinderson's contention, neither Dart Cherokee nor Ibarra mandate that a plaintiff must always submit evidence challenging the amount in controversy. Indeed, the Ibarra court declined to decide the issue. See 775 F.3d at 1199-1200 ("The Supreme Court did not decide the procedure for each side to submit proof on remand, and here we need not decide the procedural issue, either.").

The court reads those decisions as requiring a plaintiff to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meet its initial burden. See Ibarra, 775 F.3d at 1197 ("defendant in a jurisdictional dispute has the burden to put forward evidence showing that the amount in controversy exceeds $5 million . . . and to persuade the court that the estimate of damages in controversy is a reasonable one."); see also id. at 1199 ("[Defendant], as the removing [party], has the burden of proof on this."). Once defendant has done so, then the burden shifts to plaintiff to produce evidence.[4] In other words, while plaintiff may rebut defendant's evidence with his own evidence, he or she need not do so in order to prevail on his or her motion for remand. Numerous cases after Dart Cherokee have concluded, either explicitly or implicitly, that while a plaintiff may rebut defendant's evidence with his or her own evidence, he or she need not do so in order to prevail on a motion to remand. See, e.g., Dudley v. Eli Lilly and Co., 2014 WL 7360016 (11th Cir. 2014) (Analyzing Dart Cherokee and affirming the district court's remand upon plaintiff's challenge to defendant's "evidential foundation," even without independent proof, because defendant bears the burden of showing that the amount in controversy is met); Leon v. Gordon Trucking, Inc., 2014 WL 7447701, *10 n. 40 (C.D. Cal. 2014) ("Here, [plaintiff] filed a motion to remand; thus Dart Cherokee makes clear that it was [defendant's] burden to come forth with evidence establishing the amount in controversy. As noted, it has failed to do so."); Marentes v. Key Energy Svcs. Cal., Inc., 2015 WL 756516, *3 (E.D. Cal. 2015) (granting motion to remand based on plaintiff's challenge to defendant's calculations as "rely[ing] solely on speculation and unsubstantiated assumptions"); Reyna v. Fore Golf Management, Inc., 2015 WL 881390, *1 (C.D. Cal. 2015) (granting motion to remand in wage and hour class action where plaintiff moved to remand based solely on challenges to defendant's evidence and assumptions in calculating the amount in controversy).

---

[4] This approach is akin to the procedure in the summary judgment context whereby the moving party has the initial burden of production, see Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986), but if the moving party fails to carry its initial burden of production, "the nonmoving party has no obligation to produce anything[.]" Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). Given that it is defendant who seeks to invoke the court's jurisdiction, it makes little sense – especially absent a proper evidentiary showing by the removing party – to place the evidentiary burden on the non-removing party.

Here, plaintiff contends that Brinderson has not shown by a preponderance of the evidence that the amount in controversy exceeds $5 million.[5] (See Motion at 7-10; Plaintiff's Reply in Support of Motion to Remand ("Reply") at 4-5). Specifically, plaintiff contends that Brinderson improperly assumes a 100% violation rate and that it fails to provide "summary-judgment-type evidence" showing by a preponderance of the evidence that the amount in controversy exceeds $5 million. (See Motion at 7; Reply at 4-13); Ibarra, 775 F.3d at 1197 ("The parties may submit evidence outside the complaint, including affidavits or declarations, or other summary-judgment-type evidence relevant to the amount in controversy at the time of removal.") (internal quotation marks omitted). The court agrees.

Brinderson has engaged in "the typical pre-Ibarra approach of relying on so-called 'reasonable' assumed rates of violation[,]" see Unutoa v. Interstate Hotels and Resorts, Inc., 2015 WL 898512, *2 (C.D. Cal. 2015), based only on "evidence regarding the number of class members in the putative class," the total number of shifts, the lowest wage rate, and the total number of terminations during the relevant time period. (See Opp'n at 4-5). According to Brinderson's senior vice president, Gary Wilson ("Wilson"), during the relevant time period, Brinderson employed 3,514 non-exempt employees in California, (see Declaration of Gary Wilson in Support of Defendant Brinderson Constructors, Inc.'s Opposition to Plaintiff's Motion to Remand ("Wilson Opp'n Decl.") at ¶¶ 1-2), who worked 559,404 shifts in excess of five hours, and 620,190 shifts in excess of four hours (id. at ¶¶ 3 & 4), and the lowest wage rate paid to these employees was $10.69 per hour. (Id. at ¶ 6). According to Wilson, these employees "normally worked at least 8 hours per day." (Id. at ¶ 5). He also stated that there were 3,240 total instances where Brinderson's non-exempt California employees were voluntarily or involuntarily terminated. (Id. at ¶ 7).

Wilson, however, does not indicate which records he reviewed in order to arrive at the figures he provides. (See, generally, Wilson Opp'n Decl. at ¶¶ 2-8) (beginning each paragraph, with the exception of ¶ 5, with the phrase "according to the records maintained by Brinderson that

---

[5] The parties do not contest that the parties are minimally diverse or that the putative class has more than 100 members. (See, generally, Motion at 7-10; see Opp'n at 11).

I have reviewed"). The court is unable to discern whether Wilson reviewed actual employee time records and pay records, whether he relied on summaries prepared for him by someone else, or whether the records are something else entirely. This is particularly concerning with respect to ¶ 5, in which Wilson states that "Brinderson's non-exempt California employees normally worked at least 8 hours per day" (id. at ¶ 5), but there is no reference to any records or documents reviewed to reach the estimate of what Brinderson's non-exempt California employees "normally" do. Nor does Wilson explain why such records now disclose that there are 3,514 non-exempt California employees, (see id. at ¶ 2), whereas in his declaration in support of the initial NOR, he stated that there were 2,793 employees.[6] (See Declaration of Gary Wilson in Support of Defendant Brinderson Constructors, Inc.'s Notice of Removal ('Wilson NOR Decl.") at ¶ 3).

Under the circumstances, the court finds that Wilson's declaration lacks foundation and cannot be relied upon. See Fed. R. Evid. 602; AMCO Ins. Co. v. Madera Quality Nut LLC, 2006 WL 2091944, *5 (E.D. Cal. 2006) (stating that the "source of the [personal] knowledge must be disclosed[,]" and that the "burden is on the proponent to establish personal knowledge to the extent that a reasonable fact finder could believe that the witness has personal knowledge about the fact."). Thus, the court declines to rely on the data provided in paragraphs two through eight of the Wilson Opp'n Decl. See Brandon v. C.H. Robinson Co. Inc., 2014 WL 2624995, *4 (E.D. Cal. 2014) (finding declaration stating that it was likely that majority of employees worked a certain number of hours per week lacked foundation); Ornelas v. Children's Place Retail Stores, Inc., 2013 WL 2468388, *4 (N.D. Cal. 2013) ("A declaration stating the number of employees who worked for Defendant during the years prior to this action, together with assumptions about these employees, is not sufficient to establish it is more likely than not that the amount of controversy in this case exceeds $5 [m]illion.").

Even assuming Brinderson had submitted admissible, "summary-judgment-type" evidence, the result would not change. For example, with respect to the meal period claim, Brinderson

---

[6] Wilson merely states, without any explanation, that the initial "computer query that was run in July 2014 excluded a number of these persons." (Wilson Opp'n Decl. at ¶ 2).

7

asserts that plaintiff's allegation that "Defendants [sic] policies do not provide that employees must take their first meal break before the end of the fifth hour of work, that they are entitled to a second meal break if they work a shift of ten (10) hours or more, or that the second meal period must commence before the end of the tenth hour of work, unless waived[,]" (Opp'n at 13-14, quoting Complaint at ¶ 35), "mean[s] a violation exists for each putative class member for each day on which he or she worked long enough to be entitled to a meal period."[7] (Id. at 14). Operating under that assumption, Brinderson calculated the meal period penalties by multiplying the number of shifts longer than five hours for which at least one meal period was required by the lowest hourly rate of any class member. (See id.). Based on this calculation, Brinderson contends that the amount in controversy for the meal period claim is at least $5,980,028.76. (Id.).

      Brinderson's contention regarding the amount in controversy on this claim relies on the unsupported assumption that there was a violation for each class member for each day he or she worked long enough to be entitled to a meal period, i.e. that there was a 100% violation rate. "[C]ourts disavow the use of a 100% violation rate when calculating the amount in controversy absent evidentiary support." Moreno v. Ignite Restaurant Group, 2014 WL 1154063, *5 (N.D. Cal. 2014) (further stating that failing to provide "any support of a 100 percent violation rate, such as evidence based on . . . records or a random sampling . . . is not sufficient to establish the amount in controversy by a preponderance of the evidence."); Letuligasenoa v. Int'l Paper Co., 2014 WL 2115246, *5-6 (N.D. Cal. 2014) (rejecting application of 100 percent violation rate where unsupported by the record, stating that it would "improperly shift the burden to plaintiff to refute speculative assertions of jurisdiction and establish that there is no jurisdiction."). Further, as noted above, Brinderson has not provided admissible summary-judgment-type evidence to support its assumptions. (See, generally, Opp'n at 13-14); see Ibarra, 775 F.3d at 1197 ("[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable

---

[7] Brinderson supports this contention by citing to Brinker Restaurant Corp. v. Superior Court, 53 Cal.4th 1004, 1033 (2012) for the proposition that where an employer adopts a uniform policy that is facially unlawful, violation of the law is presumed. (See Opp'n at 14). Brinker, however, was not addressing violation rates, but rather whether class certification was proper. See 53 Cal.4th at 1017.

assumptions."); Roth v. Comerica Bank, 799 F.Supp.2d 1107, 1120 (C.D. Cal. 2010) (finding "the suggestion that each class member missed one to three meal or rest periods per week . . . entirely unsupported in the record."); Letuligasenoa, 2014 WL 2115246, at *5-6 (finding that the assumption that every class member was denied a meal break and a rest break every single workday was speculative).

Brinderson's reliance on plaintiff's allegation regarding the existence of a policy that does not include provisions requiring meal breaks at certain periods, (see Opp'n at 14), does not support its 100 pecent violation rate assumption. As an initial matter, plaintiff's Complaint does not state that all non-exempt employees were never provided a meal or rest break on every shift. Instead, plaintiff's Complaint alleges that the claims arise from defendant's unlawful "policy or practice." (See, e.g., Complaint at ¶¶ 18, 19, 31, 32, 45, 46 & 80) (alleging "policy or practice" of not providing meal periods, rest periods, etc.). In Ibarra, the defendant attempted to meet the amount in controversy by resort to a 100% violation rate based on allegations that "defendant ha[d] a 'pattern and practice of failing to pay their [n]on-[e]xempt employees for working off-the-clock,' and that [defendant] 'hid[] behind written policies that purport to forbid these unlawful labor practices while at the same time maintaining an institutionalized unwritten policy that mandates these unlawful practices.'" Id. at 1198. The Ibarra court explained that defendant's assumptions were flawed because plaintiff's allegations did not mean that the pattern or practice was "universally followed every time [a] wage and hour violation could arise," id. at 1199, or that the alleged institutionalized unwritten policy meant "that such violations occurred in each and every shift." Id. The court concluded that defendant "relied on an assumption about the rate of its alleged labor law violations that was not grounded in real evidence." Id.

As in Ibarra, Brinderson has relied on an assumption about the rate of its alleged labor law violations that is not grounded in real evidence.[8] Brinderson has failed to provide admissible,

---

[8] Brinderson's contentions regarding alleged admissions made by plaintiff's counsel during the parties' Local Rule 7-3 conference, (see Opp'n at 7-8), are rejected. The statements are hearsay and, in any event, statements by counsel regarding plaintiff's theory of liability is not "real evidence[,]" Ibarra, 775 F.3d at 1198, of the rate of Brinderson's alleged labor law violations. Furthermore, plaintiff's counsel unequivocally denies making such statements. (See Declaration

9

summary-judgement-type evidence to support its assumption of a 100 percent violation rate in its calculation. Thus, the court concludes that defendant has failed to establish by a preponderance of the evidence the amount in controversy with respect to the meal period claim. Without more, the court has no basis upon which to include the meal break penalties in determining the amount in controversy.[9] See Letuligasenoa, 2014 WL 2115246, at *9 ("Given that Defendants have failed to show any reasonable individual class estimate by a preponderance of the evidence, the court cannot find that Defendants have shown by a preponderance of the evidence that these class estimates, cumulatively, exceed [CAFA's threshold of] $5,000,000."); see also Ibarra, 775 F.3d at 1198 ("CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure.").

Brinderson similarly relies on a 100 percent violation rate for the rest period, minimum wage, and overtime claims, (see Opp'n at 15-17), and also assumes that all terminated employees are entitled to the maximum 30-day penalty under California Labor Code § 203. (See id. at 17). Again, given defendant's improper reliance on a 100 percent violation rate – both in terms of the number of employees included and the amount of breaks, meals, and penalties owed to each – it would be improper for the court to include the amounts put forth by defendant as a basis for determining diversity jurisdiction. See Letuligasenoa, 2014 WL 2115246, at *9 ; see also Ibarra, 775 F.3d at 1198-99; Garibay v. Archstone Communities LLC, 539 Fed.App'x. 763, 764 (9th Cir. 2013) (observing that in connection with a waiting time penalties claim defendant "assume[d] that each employee would be entitled to the maximum statutory penalty, but provide[d] no evidence supporting that assertion.").

---

of Shaun Setareh in Support of Plaintiff's Reply Re Motion to Remand at ¶¶ 5-7).

[9] The court notes that even in Untoa, a case upon which Brinderson relies, (see Opp'n at 3 & 18), the defendants did not rely on a 100 percent violation rate for most claims. See Untoa, 2015 WL 898512, at *3 (noting that defendants assumed class members "missed one required meal period per week" and "missed one required rest period per week.").

In short, the court finds that Brinderson has failed to carry its burden to show by a preponderance of the evidence that the amount in controversy exceeds $5,000,000. See Marentes, 2015 WL 756516, at *10 ("Because [defendant] fails to provide facts supporting the calculations, Defendant has failed to carry the burden to demonstrate by a preponderance of the evidence that the amount of damages in controversy exceeds $5,000,000."); see also Ibarra, 775 F.3d at 1199 ("Because the complaint does not allege that [defendant] universally, on each and every shift, violates labor laws by not giving rest and meal breaks, [defendant] bears the burden to show that its estimated amount in controversy relied on reasonable assumptions."). Accordingly, the court finds it does not have jurisdiction pursuant to CAFA.

II. FEDERAL QUESTION JURISDICTION.

"As the master of the complaint, a plaintiff may defeat removal by choosing not to plead independent federal claims." ARCO Envt'l Remediation, L.L.C. v. Dep't of Health and Envt'l Quality of Montana, 213 F.3d 1108, 1114 (9th Cir. 2000). The existence of a federal defense is not enough to justify removal to federal court. See Caterpillar Inc. v. Williams, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430 (1987) ("[I]t is now settled law that a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint[.]") (italics in original).

The well-pleaded complaint rule "provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Smallwood v. Allied Van Lines, Inc., 660 F.3d 1115, 1120 (9th Cir. 2011) (quoting Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2429. However, "[t]he jurisdictional doctrine of complete preemption serves as an exception to the well-pleaded complaint rule." Ansley v. Ameriquest Mortg. Co., 340 F.3d 858, 861 (9th Cir. 2003). The complete preemption doctrine "provides that, in some instances, the preemptive force of [federal statutes] is so strong that they completely preempt an area of state law." Id. at 861-62 (internal quotation marks omitted). The "proper inquiry focuses on whether Congress intended the federal cause of action to be exclusive[.]" Beneficial Nat'l. Bank v. Anderson, 539 U.S. 1, 9 n. 5, 123 S.Ct. 2058, 2064 (2003). "[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered,

from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430. Complete preemption "arises only in 'extraordinary' situations." Ansley, 340 F.3d at 862.

Section 301 of the LMRA provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). "The Supreme Court decided early on that in enacting this statute, Congress charged federal courts with a 'mandate . . . to fashion a body of federal common law to be used to address disputes arising out of labor contracts.'" Burnside v. Kiewit Pac. Corp., 491 F.3d 1053, 1059 (9th Cir. 2007) (quoting Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209, 105 S.Ct. 1904, 1910 (1985)) (alteration in original). "As a result of this broad federal mandate, . . . the 'preemptive force of section 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization.'" Burnside, 491 F.3d at 1059 (quoting Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 23, 103 S.Ct. 2841, 2853 (1983), superseded by statute on other grounds as recognized by Ethridge v. Harbor House Rest., 861 F.2d 1389, 1392 n. 3 (9th Cir. 1988)).

To determine if a plaintiff's state law claim is preempted by § 301, the court engages in a two-step inquiry. See Burnside, 491 F.3d at 1059. First, the court must determine "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a [collective-bargaining agreement ("CBA")]. If the right exists solely as a result of the CBA, then the claim is preempted, and [the court's] analysis ends there." Id. To make this determination, the court considers the legal character of a claim as independent of rights under the CBA. See id. at 1060. "A claim brought in state court on the basis of a state-law right that is

'independent of rights under the collective-bargaining agreement,' will not be preempted, even if 'a grievance arising from "precisely the same set of facts" could be pursued.'" Valles v. Ivy Hill Corp., 410 F.3d 1071, 1076 (9th Cir. 2005) (quoting Livadas v. Bradshaw, 512 U.S. 107, 123, 114 S.Ct. 2068, 2078 (1994)). Additionally, "reliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'" Burnside, 491 F.3d at 1060 (quoting Caterpillar, 482 U.S. at 398-99, 107 S.Ct. at 2433).

Second, if "the right exists independently of the CBA, [the court] must still consider whether it is nevertheless 'substantially dependent on analysis of a collective-bargaining agreement.'" Burnside, 491 F.3d at 1059 (quoting Caterpillar, 482 U.S. at 394, 107 S.Ct. at 2431). The court considers "whether the claim can be resolved by 'look[ing] to' versus interpreting the CBA. If the latter, the claim is preempted; if the former, it is not." Id. at 1060 (internal citations omitted) (alteration in original); see Cramer v. Consol. Freightways, Inc., 255 F.3d 683, 691-92 (9th Cir. 2001), cert. denied, 534 U.S. 1078 (2002) ("[A]lleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA."). "The plaintiff's claim is the touchstone for this analysis; the need to interpret the CBA must inhere in the nature of the plaintiff's claim." Cramer, 255 F.3d at 691. "When the parties do not dispute the meaning of contract terms, the fact that a CBA will be consulted in the course of state law litigation does not require preemption." Ward v. Circus Circus Casinos, Inc., 473 F.3d 994, 998 (9th Cir. 2007).

Section "301 preemption is not designed to trump substantive and mandatory state law regulation of the employee-employer relationship; § 301 has not become a 'mighty oak' that might supply cover to employers from all substantive aspects of state law." Valles, 410 F.3d at 1076 (internal quotation marks and citations omitted). "In particular, the Court has sought to preserve state authority in areas involving minimum labor standards." Id. Therefore, "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." Id. Indeed, "§ 301 does not permit parties to waive, in a collective bargaining agreement, nonnegotiable state rights conferred on individual employees" and "must not be construed to give employers and unions the power to displace state regulatory laws." Id. (internal quotation marks

and citations omitted). Where waiver of state rights is permissible under state law, "the CBA must include clear and unmistakable language waiving the covered employee's state right for a court even to consider whether it could be given effect." Id. (internal quotation marks and citations omitted).

Here, Brinderson's initial NOR appears to concede that plaintiff's claims are grounded in state law, i.e., they do not arise from the CBA. (See, generally, NOR at ¶¶ 5-13). For example, Brinderson alleged in the initial NOR that plaintiff's claims were preempted because "the Court must analyze and interpret the CBA to determine, inter alia, whether its comprehensive grievance and arbitration provisions extend to Defendants BP America, Inc. and BP Corporation North America, Inc. (collectively, "BP Defendants") despite the fact that the BP Defendants are not themselves parties to the CBA." (NOR at ¶ 12) (internal quotation marks altered). Brinderson noted that the court could "exercise supplemental jurisdiction over Plaintiff's non-preempted state claims, if any[.]" (Id. at ¶ 13).

In its Amended NOR, Brinderson significantly and substantively amended the basis for removal by asserting that plaintiff's claims are preempted because the court would be required to analyze and interpret the CBA "to resolve Plaintiff's wage, overtime, meal period and rest period claims, and the claims that are derivative thereof."[10] (Amended NOR at ¶ 12).[11] To support its contention that the Amended NOR compels a finding of preemption, Brinderson asserts that in a related case pending in this Court, Maiava v. Brinderson Constructors, Inc. et al., Case No. CV 14-5514 BRO (AJWx), "Judge O'Connell has already determined that the same CBA that is controlling here must be interpreted to resolve the claims at issue – i.e., Article III regarding hours and overtime, and Article IV regarding rest and meal periods." (Opp'n at 20). Brinderson

---

[10] Plaintiff contends that Brinderson's Amended NOR is improper because it asserts additional grounds as to why § 301 preemption applies. (See Motion at 5-6). The court agrees. However, even assuming Brinderson had sought leave to amend the NOR, which it did not, the Amended NOR does not change the result.

[11] The Amended NOR cites to "D.I.," which the court assumes refers to Docket Entry.

suggests plaintiff cannot now dispute this result. (See id. at 21-22). Brinderson's assertions are disingenuous and misleading.

As plaintiff points out, Judge O'Connell expressly and unambiguously found that the Maiava plaintiff's state-law claims were not preempted. (See Maiava, Court's Order of September 11, 2014 Granting in Part and Denying in Part Defendant's Motion to Dismiss Plaintiff's First Amended Complaint at 14). After setting forth the standard for preemption under § 301, Judge O'Connell concluded:

> Here, all of Plaintiff's claims seek to enforce state law rights entirely independently of the CBA. Moreover, even though the Court must consider whether the CBA waives the right to litigate Plaintiff's state statutory claims . . . the state law rights at issue here do not substantively depend on an analysis of the CBA, see Cramer[, 255 F.3d at 692] (finding § 301 does not apply in cases presenting the question of whether the plaintiff's union bargained away the state law rights at issue, as "a court may look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption").

Id. (emphasis added). Here, as in Maiava, the Complaint asserts claims all arising from California law (see Complaint at ¶¶ 23-89) and makes no mention of the CBA. (See, generally, id.); see Vasserman v. Henry Mayo Newhall Memorial Hospital, 2014 WL 6896033, *23 (C.D. Cal. 2014) (Morrow, J.) (concluding that plaintiff had "alleged claims that ar[o]se under state law, rather than the CBAs that governed her employment and that of putative class members, and that resolution of her claims [would] not substantially depend on interpretation of those agreements.").

Notwithstanding Judge O'Connell's findings, Brinderson contends that plaintiff's overtime claim is also preempted because California Labor Code § 510 upon which plaintiff relies for her overtime claim does not apply since that claim falls within a statutory exemption set forth in California Labor Code § 514. (See Opp'n at 21-22). Relying on Coria v. Recology, Inc., 2014 WL 3885873 (N.D. Cal. 2014), Brinderson argues that "[b]ecause § 510 does not apply, Plaintiff's overtime rights only arise from interpretation of the CBA. In other words, because Section 514's

exception applies, Plaintiff's overtime claim cannot be based on a state law right to overtime under Section 510." (Opp'n at 22). Brinderson's argument is unpersuasive. As the court stated in Vasserman, in rejecting the same argument:

> First, the fact that the § 514 exemption may apply does not alter the substance of [plaintiff's] claim. If it is ultimately determined that § 514 applies, this will simply mean that [plaintiff] has alleged a claim under a statute she cannot invoke, and under which she is unable to recover. Stated differently, although [plaintiff's] claim may ultimately fail, the court is unable to conclude that its resolution is substantially dependent on analysis of the CBAs when the supporting allegations focus only on state law. Indeed, [plaintiff] specifically and repeatedly pleads violations of state law, not a violation of the CBAs or right they provide.
>
> Second, because, as noted, [defendant's] reliance on § 514 is essentially a defense to [plaintiff's] overtime claim, it does not give rise to § 301 preemption.

Vasserman, 2014 WL 6896033, at *14-15. The court concluded that plaintiff's claim was therefore not preempted.[12] Id. at *15; see also Placencia v. Amcor Packaging Distribution, Inc., 2014 WL 2445957, *3 (C.D. Cal. 2014) ("Plaintiff, as the master of his complaint, has chosen to plead his overtime claim not under the CBA, but rather under California law. [Defendant] essentially argues Plaintiff can't plead such a claim. That may be proper grounds for demurrer, but it is not sufficient grounds for removal here.").

Finally, because Brinderson is essentially relying on the defensive use of the CBA, there is no preemption. See Burnside, 491 F.3d at 1060 ("[R]eliance on the CBA as an aspect of a defense is not enough to 'inject[] a federal question into an action that asserts what is plainly a state-law claim.'") (quoting Caterpillar, 482 U.S. at 398-99, 107 S.Ct. at 2433); see also

---

[12] To the extent Coria conflicts with Vasserman, see id. at *17 n. 72, the court finds Vasserman's reasoning more persuasive.

16

Vasserman, 2014 WL 6896033, at *16. In short, the court again concludes that it does not have federal question jurisdiction based on the LMRA..

III. COSTS AND FEES.

Plaintiff seeks an award of costs and fees in the amount of $31,750. (See Motion at 10; Reply at 20). Section 1447(c) provides in relevant part that "[a]n order remanding the case may requirement payment of just costs any actual expenses including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141, 126 S.Ct. 704, 711) (2005). Here, the court finds that Brinderson did not lack an objectively reasonable basis for removal, and therefore denies plaintiff's request for fees and costs.

**This Order is not intended for publication. Nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

### CONCLUSION

Based on the foregoing, IT IS ORDERED that:

1. Plaintiff's Motion to Remand **(Document No. 28)** is **granted in part** and **denied in part**.

2. The above-captioned action shall be remanded to the Superior Court of the State of California for the County of Los Angeles, 111 North Hill Street, Los Angeles, California 90012, for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1447(c).

3. All pending motions and the ex parte application (**Document Nos. 22, 23 & 35**) are **denied** as moot. Document Nos. 22 and 35 are denied without prejudice, and may be filed in state court, if warranted, after complying with the state court's rules and procedures.

4. The Clerk shall send a certified copy of this Order to the state court.

Dated this 30th day of June, 2015.

/s/
Fernando M. Olguin
United States District Judge